ing appears to the contrary of this rule in the cases of Cox v. Hightower, 19 Tex. Civ. App. 536, 47 S. W. 1048, and Ostrom v. Arnold, 24 Tex. Civ. App. 192, 58 S. W. 630, cited in the certificate.

[3] In this case, no action of the trial court on the appellant's affidavit was sought until, by lapse of time, the court had lost jurisdiction to hear same. The acts of the trial court with respect to the affidavit are void; hence they cannot furnish a basis upon which the jurisdiction of the Court of Civil Appeals may be founded.

For the reasons stated, the Court of Civil Appeals did not acquire jurisdiction of this cause, and did not err in dismissing the appeal. We recommend that the certified questions be so answered.

CURETON, C. J. Opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

---

### TEXAS & N. O. RY. CO. v. TILLEY.*
(No. 1092-4994.)

Commission of Appeals of Texas, Section A.
May 16, 1928.

1. **Master and servant** ⟜264(8)—Brakeman suing for injuries cannot be charged under statute with negligence in continuing in service, where pleading charged no such negligence (Rev. St. 1925, art. 6437).

In action for injuries sustained by brakeman from hot sand used in sanding engine flues, where pleading did not charge negligence in continuing in service in view of risk, employee cannot be charged under Rev. St. 1925, art. 6437, with such negligence.

2. **Master and servant** ⟜204(1)—In brakeman's action for injuries, question of assumed risk depended upon whether he was engaged in interstate transportation at time of injury (Federal Employers' Liability Act [45 USCA §§ 51–59]; Transportation Act of 1920 [49 USCA § 71 et seq.]).

In action by brakeman for injuries to eye from hot sand used in sanding engine flues, whether question of assumed risk under Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665) and Transportation Act of 1920 (49 USCA § 71 et seq.; U. S. Comp. St. § 10071¼a et seq.) was in case depended upon whether brakeman was engaged in interstate transportation or work so closely related to it as to be practically part of it at time of injury.

3. **Master and servant** ⟜265(4)—Railroad invoking defense of assumed risk in brakeman's action for injuries had burden of showing that he was engaged in interstate transportation (Federal Employers' Liability Act [45 USCA §§ 51–59]; Transportation Act of 1920 [49 USCA § 71 et seq.]).

In brakeman's action for injuries sustained to eye from hot sand used in sanding flues of engine, railroad company had burden of showing that brakeman was engaged in interstate transportation under Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665) and Transportation Act of 1920 (49 USCA § 71 et seq.; U. S. Comp. St. § 10071¼a et seq.), in order to invoke defense of assumed risk.

4. **Appeal and error** ⟜930(1)—On appeal, in deference to judgment, it was permissible to assume that brakeman was mistaken as to date of injury and correct as to route, train, and place.

On appeal, in brakeman's action for injuries to eye received from hot sand used in sanding flues of engine, where his testimony included ambiguities in respect to date on which injury occurred but testimony as to circumstances was not contradicted, *held* that, in deference to verdict and judgment, it was permissible to assume that he was mistaken as to date and correct as to route, train, and place.

5. **Master and servant** ⟜265(4)—In brakeman's action for injuries, evidence that he was engaged in interstate transportation held essential to defense of assumed risk (Federal Employers' Liability Act [45 USCA §§ 51–59]; Transportation Act of 1920 [49 USCA § 71 et seq.]).

In action by brakeman for injuries sustained to eye from hot sand used in sanding engine flues, where railroad invoked defense of assumed risk under Federal Employers' Liability Act (45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665) and Transportation Act of 1920 (49 USCA § 71 et seq.; U. S. Comp. St. § 10071¼a et seq.), *held*, that evidence that brakeman was engaged in interstate transportation was essential.

6. **Appeal and error** ⟜671(6)—Assignments of error, unsupported in bills of exception, held beyond review.

Assignments of error, unsupported in bills of exception, *held* beyond review on appeal.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Guy Tilley against the Texas & N. O. Railway Company. To review the judgment of the Court of Civil Appeals (297 S. W. 1063), affirming a judgment for the plaintiff, defendant brings error. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, Guinn & Guinn, of Rusk, and Garrison & Watson, of Houston, for plaintiff in error.

G. W. Gibson, of Jacksonville, and Smithdeal, Shook, Spence & Bowyer, of Dallas, for defendant in error.

NICKELS, J. The opinion of the Court of Civil Appeals is reported at page 1063 et seq. of 297 S. W., and to it we refer for a general statement of the case.

1. The pleading on which assumed risk is predicated is embraced in this paragraph of the answer:

---

"Further specially answering herein, defendant says that if the plaintiff was an experienced brakeman and had been in the service of the defendant for some time and knew that in order to successfully operate defendant's trains it was necessary to sand the flues of the engine; that the plaintiff at said time and prior thereto was thoroughly conversant with the way and manner in which the flues of the engine were sanded and the necessity therefor; that if the plaintiff in the performance of his duties got a particle of hot sand in his eye by reason of sanding the flues, said injury, if any, was by the plaintiff received while in the performance of his services as a brakeman and was the result of one of the ordinary risks incident to his employment; that by reason of the fact that plaintiff and defendant at the time plaintiff claims to have been injured were engaged in interstate commerce, the defendant's liability, if any, is governed and controlled by virtue of the federal statute known as the Employers' Liability Act [45 USCA §§ 51–59; U. S. Comp. St. §§ 8657–8665] and Transportation Act of 1920 [49 USCA § 71 et seq.; U. S. Comp. St. § 10071¼a et seq.]; that under said acts it is specially provided that the plaintiff assumed all of the risks incident to his employment, as well as all risks growing out of the negligence of the servants, agents, and employees of the defendant of which plaintiff had knowledge or by the exercise of ordinary care could have obtained knowledge, and that plaintiff's injuries, if any he received, fell within the spirit and letter of said Employers' Liability Act and Transportation Act; that by reason of the fact that plaintiff's injuries, if any, were the result of risk ordinarily incident to the business in which he was engaged he thereby assumed the risk which precludes him from recovery herein, and of this defendant prays judgment of the court."

[1] In our statute (article 6437, R. S. 1925) it is provided:

"That while the employee does assume the ordinary risk incident to his employment he does not assume the risk resulting from any negligence on the part of his employer, though known to him."

It is further provided that, in a suit wherein "it is alleged and proven" that the "employee was chargeable with negligence in continuing in the service * * * in view of the risk, dangers and hazards of which he knew or must necessarily have known, in the ordinary performance of his duties," such "fact shall not operate to defeat recovery, but the same shall be treated and considered as constituting contributory negligence," with possible diminishment of recovery.

The pleading does not include a charge of negligence "in continuing in the service"; hence the part of the state statute secondly mentioned has no application.

The charges requested by defendant, and whose refusal make up the bases of the complaints in one group of the assignments, had reference (a) to assumption that plaintiff and defendant were engaged in interstate commerce activities, or (b) to knowledge (actual or imputed) of the negligence asserted in respect to sanding the flues without warning. Perforce, they related to defenses abrogated (to the extent of the state's power) by enactment of what is now article 6437.

[2, 3] Unless "assumed risk" is in the case, the questions thus presented are moot; and whether it is in the case depends upon the fact (conclusively established or issuable) that Tilley was "engaged in interstate transportation or in work so closely related to it as to be practically a part of it" at the time of the injury (Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 558, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; C., B. & Q. Ry. Co. v. Harrington, 241 U. S. 177, 180, 36 S. Ct. 517, 60 L. Ed. 941), the burden in respect to that fact being upon the railway company (Kanawaha, etc., R. Co. v. Kerse, 239 U. S. 576, 581, 36 S. Ct. 174, 60 L. Ed. 448; Osborne v. Gray, 241 U. S. 16, 21, 36 S. Ct. 486, 60 L. Ed. 865).

Tilley averred injury "on or about" January 21, 1924, occurring while he was in the "regular discharge of his duties as head brakeman" and "just as the train was approaching the station of Fry's Gap in Cherokee county."

On direct examination (in his behalf) he testified that "on January 21, 1924, we were going into Jacksonville" from the west "and approaching Fry's Gap Hill," that in performance of his duties as "head brakeman" he was required to be "on the second car from the head end," and that while there he received the injury, that he went into "town" (Jacksonville) "and went to the house" (his home) "around 10 o'clock in the morning" and shortly thereafter "walked down to the office and got a certificate" from "Miss Bevil to go to a doctor" and "went to Dr. J. M. Travis," who examined his eye. On cross-examination, he said "that was on the 21st day of January, 1924," that "he went to Dr. Travis on the same morning that he got his eye hurt" and he "only went one time to Dr. Travis."

Miss Bevil, referred to by Tilley, is "chief clerk" at Jacksonville for the railway company and was such in January, 1924. It was and is her duty to "write the permits for employees" (i. e., "certificates" such as that mentioned by Tilley); "on January 20, 1924," she "issued a permit for Guy Tilley to a doctor" (i. e., "to Dr. Travis"); she "did not issue that permit on January 21st."

Dr. Travis (referred to by Tilley and Miss Bevil) was "local surgeon and physician for" the railway company at Jacksonville; he examined Tilley's eye and "prescribed a little medicine for it"; he made no record of the examination, etc., because he regarded the injury as a minor one, and could not fix the date; the prescription, as written, could have been "filled" at any place, but if

"filled" by Jacksonville Drug Company it would be "filled" at the company's expense.

Tipton is a "member of the drug firm of Parker & Tipton" at Jacksonville; he produced "the original" prescription "given to Guy Tilley by Dr. Travis in January, 1924"; the prescription was not dated, but the one "immediately before that was dated" January 18, 1924" and "next one above is January 21, 1924"; the prescriptions were numbered and filed "in regular order," he said.

Tilley, being recalled in his behalf, said ("as to how" he "arrived at the date when this injury occurred") that he "took the bottle that he got" (container of the medicine prescribed) "and went down to Mr. Parker and Tipton's drug store and asked Mr. Parker to give him the date of that prescription and he gave the date of January 21, 1924." On cross-examination, he said that "he fixed the date as January 21st from the date which Mr. Parker said was on the prescription."

Throughout his testimony Tilley insisted that he received the injury while on a train traveling toward Jacksonville from the direction of Dallas.

By the testimony of its conductor and by the testimony of Miss Bevil (testifying from records), the company proved that Tilley, on January 21, 1924, was rear brakeman on a freight train leaving Jacksonville at 6:30 a. m., and traveling "west" toward Dallas and which reached Dallas at 9 p. m., same date; on that trip Gibson was "head brakeman." It was likewise shown that the train, with Gibson as "head brakeman" and Tilley as "rear brakeman," left Dallas at 8:15 a. m., January 22, 1924, and reached Jacksonville at 11:10 (or 11:15) p. m., same date. By the records kept by Miss Bevil, it was shown that Tilley was "brakeman" on a train leaving Jacksonville for Dallas on January 18, 1924, and returning to Jacksonville on January 19, 1924; the records disclosed no trip by Tilley on January 20, 1924, and that, Miss Bevil explained, was because the 20th "must have been his lay-over day."

Athens and Mabank are stations west of Jacksonville. The crew of the train which left Jacksonville (for Dallas) at 6.30 a. m., January 21, 1924, at Athens (a junction with the road of the St. L., S. W. Ry. Co. of Texas) "picked up" a car loaded with potatoes which had been loaded at a point in Minnesota and which was destined to Mabank; the car was carried thence westward in the train and delivered at Mabank. These facts are the only ones in evidence showing or tending to show articles moving in interstate commerce in any of the trains referred to or that the railway company or Tilley were engaged in activities pertaining to interstate commerce.

[4] Tilley's testimony includes ambiguities, if not contradictions, in respect to the date on which his injury occurred; and those ambiguities, etc., are deepened by juxtaposition of his testimony with that of Reading (the conductor) and that of Miss Bevil. Nevertheless, he is not bound to January 21, 1924, as the date of injury. Stevenson v. Barrow (Tex. Com. App.) 291 S. W. 1101; Weir v. McGee, 25 Tex. Supp. 21.

His testimony about the conditions by which the injurious occurrence was circumstanced makes up all the evidence in respect thereto. On those points he neither contradicts himself nor is contradicted by others. If injured at all, he was injured while on a train passing through Fry's Gap and approaching Jacksonville from the west; perforce, he was not injured while on the train going westward and in which the interstate shipment mentioned was handled. In deference to the verdict and judgment, it is permissible and right to assume that he was mistaken as to date (Ibid.) and correct as to route, train, and place.

[5] In our opinion, there is no evidence for the predicate essential to the defense of assumed risk under the federal statutes. Osborne v. Gray, supra. In consequence, assignments 1 to 5, inclusive, 8, and 12 must be overruled.

[6] 2. In the sixth, tenth, and eleventh assignments complaints are made of rulings allowing evidence proffered by Tilley and excluding evidence offered by the railway company. These assignments, however, are without support in bills of exception and for that reason beyond review.

3. Misconduct of the jury is the subject of the seventh assignment. To what was said by the Court of Civil Appeals in respect to that matter, we add that the railway company introduced in evidence a paper showing assignment of one-half of the cause of action, or recovery, in payment of attorneys' fees. The document was put in evidence without restriction and left there without request for instruction to the jury not to consider it. This was calculated to provoke discussion in the jury room, and just ground for complaint is not perceived.

4. The Court of Civil Appeals, in our opinion, correctly disposed of the contention that Attorney Gibson, assignee in the paper last mentioned, was an indispensable party; this being the matter presented in the ninth assignment.

5. We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.