The Charles A. Liemke Co., A Corporation, Appellant, v. Krekeler Grocer Company, A Corporation, Respondent.—95 S. W. (2d) 820.

St. Louis Court of Appeals.   Opinion filed July 7, 1936.

*Harry Gershenson* for appellant.

*Foristel, Mudd, Blair & Habenicht* and *Claude W. McElwee* for respondent.

McCULLEN, J.—This is a suit on an account which was instituted in a justice of the peace court by appellant, hereinafter referred to as plaintiff, against respondent, hereinafter referred to as defendant. On appeal to the Circuit Court of the City of St. Louis it was tried before the court, a jury having been waived, and resulted in a judgment for defendant. Plaintiff brings the case to this court by appeal.

The statement filed in the justice court and on which cause was tried in the circuit court, omitting caption and signature, is as follows:

"Plaintiff states that defendant is indebted to plaintiff upon attached account in the sum of $691.20.

"Wherefore, plaintiff prays judgment against defendant in the sum of $691.20 and costs."

The attached account referred to in the foregoing statement is as follows:

"30 gross of root beer extract at $23.40 per gross, or a total of $691.20."

The price per gross in the above statement is obviously incorrectly stated in the abstract, but since no point is made thereon it is immaterial.

Blanche Liemke, secretary and treasurer of the plaintiff company, testified on behalf of plaintiff that plaintiff sold and delivered to defendant thirty gross of root beer extract for the sum of $691.20, as evidenced by a batch of written orders signed by the defendant company. The batch of orders referred to was identified by the witness, marked Exhibit A and introduced in evidence. The form of the order which was used in all the transactions is as follows:

"Jobber Please sign and return this copy at once to THE CHARLES A. LIEMKE CO., St. Louis, U. S. A.

"No.                            Date Feb. 9, 1931.

"Sold Lewis L. Block

"Address: 3128 Lafayette, St. Louis, Mo.

"Jobber preferred: Krekeler Groc. Co.

"Address: St. Louis, Mo.

"When: April 1, 1931.          Salesman H. C. Duvall.

"All conditions of sale must be stated on this order. Absolutely not responsible for verbal understandings.

"3 Doz. 3 oz. Liemke's Star Brand Root Beer Extract C.

"Important—This must be filled in by salesman.

"Jobber Ship            Extract.

"Liemke Ship                    Lewis L. Block.
                "Order must be signed.

"We hereby accept this order for our account and risk to be shipped as hereon specified.

"We have kept the white original copy for our reference.

     "(Rubber stamp) KREKELER GROCER CO.

                    "Per——————————————

                    "Jobber's Signature."

Each of the orders was made out to a different party named at the top of the order at the point marked "Sold." They bore different dates and were for various amounts of root beer, the whole batch aggregating thirty gross totaling $691.20. All the orders were in the same form and were shown to have been accepted at the bottom, either by having been stamped with a rubber stamp "Krekeler Grocer Co. per——————" or by having been marked in ink or pencil "K. G."

The witness further testified that demand was made for payment of the amount claimed and that payment was refused. She also testified that the price charged for the merchandise was reasonable. On cross-examination, the witness was asked:

"Q. Now prior to the delivery of this extract to the Krekeler Grocer Company did your company start out on a campaign of sales of extract?"

Counsel for plaintiff objected to the introduction of any oral testimony of any arrangement or agreement prior to or contemporaneous with the sale of the merchandise, for the reason that:

"This is a written contract sued upon, a written contract for the merchandise, and the contract upon its face states that it is the full agreement of the parties, and that the introduction of any such testimony would be an attempt to alter, vary or change the terms of a written agreement."

In answer to this objection, counsel for defendant stated that he would show in evidence:

"That this is not a contract between the Krekeler people and the Liemke people, but is a copy of a contract between the Liemke people and certain retailers. I want to offer to show the circumstances under which this transaction took place."

Counsel for plaintiff again objected for the reasons mentioned, and further stated that:

"The contract upon its face states that it embodies the full agreement of the parties, and that any attempt to show any other arrangement will be altering, varying or changing the terms of a written instrument."

The court overruled plaintiff's objection and plaintiff saved its exceptions, whereupon the witness testified that the plaintiff company started out on a campaign of selling to retail grocers the extract mentioned; that the orders were made out with an original and three carbons; that the plaintiff company employed a sales manager, a Mr. Gardner, and some ten salesmen under him to carry on the sales campaign; that the salesmen of plaintiff directly solicited the retail trade and were instructed to sell the extract to the retail dealers under the agreement that the retail dealers would supply plaintiff company with a list of their customers and that plaintiff would mail letters to such customers stating therein that if the customers would present the letter at the retail dealer's store, which plaintiff would name in the letter, the customer would receive one bottle of extract free; that the salesmen of plaintiff went to the various retail dealers and took orders which were signed by the retail dealers for the thirty gross of extract involved in the suit.

The witness further testified that the retail dealer signed the first

sheet of the order, a white sheet, by which he agreed to buy the extract specified therein; that the plaintiff company kept such original white sheet in its possession, the same being taken charge of by Mr. Gardner, its sales manager, and that the blue sheet, which was a carbon copy, and the white sheet were sent to defendant together to be O.K'd by defendant with respect to the credit of the retail dealer, and if defendant found that the credit of the retail dealer was all right, defendant attempted delivery; that plaintiff had no delivery truck of any kind. The witness did not know whether or not the defendant was a jobbing company, but knew that it sold various groceries to the retail trade. The witness was asked:

"Q. Now as a matter of fact, your company had guaranteed to the Krekeler Company the validity of those orders, and had guaranteed that those orders would be accepted upon delivery by the retail grocers?"

Counsel for plaintiff objected to this line of questioning on the ground that the testimony sought thereby to be introduced was an attempt to change, alter or vary the terms of the original orders which were written and were in evidence. The objection was overruled, and the witness testified that the Krekeler Company (defendant) had already guaranteed the credit on the blue slips which were the orders sued upon and in evidence; that she did not remember that plaintiff had guaranteed to the defendant that those orders were all valid orders taken by its salesmen, but she would not say that plaintiff did not guarantee the validity thereof. In this connection the witness was asked:

"Q. By Mr. McElwee: As a matter of fact, you did guarantee the validity of those orders, didn't you?" to which plaintiff's counsel objected as follows:

"Mr. Gershenson: I object to the question for the same reason I have objected right along."

Upon the objection being overruled by the court, the witness answered:

"A. I don't know what the company guaranteed. I suppose they did."

The witness was further asked:

"Q. Yes, and as a matter of fact, they also guaranteed that the retailers who signed those orders would in fact accept the order when it was delivered."

After an objection by plaintiff had been made and overruled by the court and an exception had been saved by plaintiff, the witness answered: "Yes, sir." The witness was further examined on this point as follows:

"Q. By Mr. McElwee: Now as a matter of fact, all of those orders

recited in these blue slips when they were taken to the retailers by the Krekeler Company they refused to accept them—the retailers refused to accept them.

"Mr. Gershenson: Your Honor, please, I object to that for the reason that we are not suing the retailers. We are suing the Krekeler Grocer Company in this case upon a written order which has been offered in evidence, and this testimony tends to change, alter or vary the express terms of a written contract."

The objection made by counsel for plaintiff was overruled by the court and an exception was duly saved, after which the witness testified that she did not know whether or not the retailers accepted the extract; that Mr. Gardner was the one who handled the deal entirely as he was plaintiff's sales manager; that Mr. Gardner sold the merchandise in question and brought in the orders O.K.'d.

Throughout the entire cross-examination of plaintiff's witness Blanche Liemke, as well as in connection with the testimony and evidence introduced by defendant through its own witnesses, among whom was Mr. Gardner, plaintiff's former sales manager, counsel for plaintiff repeatedly and earnestly objected on the ground that by such testimony and evidence defendant was attempting to alter, vary and change the terms of a written contract; that the orders referred to being in writing were written contracts between plaintiff and defendant and that parol testimony concerning the dealings of the parties was not admissible.

Defendant's evidence was to the effect that a verbal contract had been entered into between plaintiff and defendant whereby it was agreed that plaintiff would employ several salesmen to call upon the retail grocery trade in the City of St. Louis to solicit orders for the sale by plaintiff to the retail grocers of plaintiff's Star Brand Root Beer Extract; that as an inducement to procure such sales, the salesmen of plaintiff obtained from the retail grocers a list of their customers; that plaintiff would mail to each person on such list a letter stating that the letter entitled the person addressed to one bottle of Liemke's Star Brand Root Beer Extract free if presented at the store of the retailer named in the letter.

The evidence of defendant further showed that the arrangement or verbal contract between the parties provided that where a sale of root beer extract was made by plaintiff's salesman to a retail grocer who would name the defendant company in the space provided for in the order blank as the "Jobber preferred," plaintiff would deliver to defendant carbon copies of such order; that defendant would then pass upon the credit of such retail grocer-purchaser and if the retailer's credit was good, defendant signed the blue copy of the order in the place provided for "Jobber's Signature;" that defendant

would then return the blue copy of such order to plaintiff, keeping the white copy for its own records, whereupon plaintiff would deliver the ordered quantity of root beer extract to defendant for delivery to the retail grocer-purchaser. Further evidence by defendant was to the effect that under the verbal agreement between plaintiff and defendant, plaintiff guaranteed to defendant the validity of the orders, and also guaranteed that the root beer extract called for in the written orders would be accepted by the retail grocer-purchaser when delivered by defendant, and that if the same should be refused by the retail grocer, defendant would be allowed by plaintiff fifty cents a gross for drayage and overhead costs upon returning to plaintiff such refused extract.

According to defendant's evidence, plaintiff's salesmen obtained orders for an aggregate of forty-five gross of root beer extract, all of which were delivered to defendant, in pursuance of the verbal agreement, and defendant indicated approval of the credit of such purchasers by signing the blue copy of the orders in the place provided for "Jobber's Signature," sent them to plaintiff and kept the white copies thereof; that the forty-five gross of root beer extract thus ordered were delivered by plaintiff to defendant; that fifteen gross were delivered to the grocer-purchasers by defendant and plaintiff was paid for that amount; that defendant attempted to deliver the remaining thirty gross of such orders but that the purchaser named in each such order refused to accept delivery.

Defendant introduced further evidence to the effect that it notified plaintiff of the refusal of the purchasers named to accept delivery of the thirty gross of root beer extract, and that defendant sent the thirty gross to plaintiff's warehouse but plaintiff refused to accept them, whereupon defendant placed them in a public warehouse, sent the warehouse receipt to plaintiff, but that plaintiff refused to accept it.

Among plaintiff's assignments of error is one to the effect that the court erred in excluding competent, relevant and material evidence offered by plaintiff. We find nothing in the record to sustain this assignment. The abstract does not show any evidence offered by plaintiff which was excluded by the court.

All of the other assignments of error made by plaintiff are founded upon the point that the trial court erred in admitting, over plaintiff's objections and exceptions, testimony and evidence which tend to alter, vary and change the terms of the orders which constituted written contracts of sale between plaintiff and defendant.

Plaintiff earnestly contends in this court, as it did in the trial court, that all of the testimony as to the oral agreements between plaintiff and defendant, and as to the validity of the orders, the cam-

paign of advertising as well as all other verbal agreements, were incompetent, irrelevant and therefore inadmissible for the reason that they tended to alter, modify and change the terms of the written blue orders which were signed by defendant and which constituted complete contracts between plaintiff and defendant. Plaintiff insists that the verdict and judgment of the trial court are against the law because they are based on the incompetent, irrelevant and inadmissible testimony referred to.

To sustain its contention, plaintiff relies entirely upon the case of J. B. Colt Co. v. Gregor, 328 Mo. 1216, 44 S. W. (2d) 2. In that case the defendant Gregor admitted that he had entered into a valid and binding contract in writing with the plaintiff therein, but claimed that at the time he signed the written contract he had an oral agreement with plaintiff's agent which was different from the written contract, and insisted that the oral agreement prevailed over certain terms of the written contract. The written contract in that case was for the outright purchase of a carbide lighting plant described therein, and provided for the payment of the purchase price by the execution and delivery of a note. The defendant therein contended that the oral understanding was to the effect that defendant was to take the lighting plant upon trial with the right to retain or reject it after a year's use thereof, and that his note was to be executed and delivered subject to the condition that if upon a trial of the lighting plant for the period mentioned he found it satisfactory, the note was to become effective, otherwise it was not to become effective and was to be returned to him.

In that case defendant was permitted by the trial court, over the objection and exception of plaintiff, to testify to such contemporaneous oral agreement which he claimed he had with plaintiff's agent and which modified and varied the plain terms of the written contract. With respect to this point, the Supreme Court said:

"When a written contract shows on its face that it includes the entire agreement and expresses all the obligations assumed by the parties thereto, *as does the contract in the instant case*, then in the absence of fraud or mistake, parol evidence is not admissible to add to, vary, modify, or contradict the terms of the written contract, and evidence admitted on the trial of this case, on the part of the defendant, to show a prior or contemporaneous oral agreement adding to, varying or modifying the written contract, should not have been admitted because of the rule that all prior and contemporaneous oral agreements are merged into the written contract. . . . The written contract speaks for itself, and there is no showing here which permits defendant to set up and rely upon an oral agreement different

in its terms." [J. B. Colt Co. v. Gregor, 328 Mo. l. c. 1225, 44 S. W. (2d) l. c. 6.] (Emphasis ours.)

It is evident from the foregoing excerpt taken from the opinion in the case relied on by plaintiff herein that the facts in that case are clearly distinguishable from the facts in the case at bar. In the Colt case the suit was brought by the seller directly against the purchaser. No third party called a "jobber" was involved in the transaction, whereas in the case at bar plaintiff has brought its suit not against the purchasers named in the orders but against defendant as the jobber named therein. The written contracts or the orders upon which plaintiff relies do not show that there were direct sales by plaintiff to defendant of the merchandise named therein. The orders show plainly that defendant occupied the position of "jobber preferred" and that the purchaser named in each of the orders was not the defendant herein but was some retail grocer, as, for instance, in the one order which we have set forth in full and which appears in the abstract herein as an example, the purchaser was one Lewis L. Block.

Notwithstanding the declaration on the face of the order that: "All conditions of sale must be stated on this order. Absolutely not responsible for verbal understandings;" it conslusively apears that all of the conditions of the sale were not stated on the face of the order. The order does not contain anything to show the price at which the merchandise was sold or was to be sold. It does not show what price was to be paid by the retail grocer-purchaser, nor does it show what price was to be paid by the jobber. Price is unquestionably one of the conditions of such a sale, and absence of the necessary element of price makes it obvious that the written order does not contain the entire contract or arrangement entered into between plaintiff as the seller, and defendant as the jobber preferred, and Lewis L. Block as the purchaser in the particular order set forth herein as an example. The same reasoning, of course, applies to all the other orders involved because they were all alike in this respect.

It was, therefore, not only proper for the trial court to admit the parol evidence offered by defendant, but it was absolutely necessary to do so to enable the trial court to determine the respective rights and obligations of plaintiff and defendant, as well as to determine what amount, if any, defendant owed plaintiff under their arrangement. Furthermore, it cannot properly be said that the parol evidence admitted by the court showing the verbal agreement between plaintiff and defendant varied or contradicted in any manner whatsoever the terms of the written orders. The written orders were merely convenient instruments designed by plaintiff for the use of itself and defendant in carrying out their arrangements under their verbal

agreement whereby plaintiff's merchandise was to be sold to the retail grocery trade through defendant as the "jobber preferred" whenever defendant was so designated by the retail grocer-purchaser from whom plaintiff's salesmen received orders for such merchandise. It is very clear that the orders themselves did not constitute the whole arrangement or agreement between plaintiff and defendant.

It is true the rule is well established, as plaintiff contends, that parol evidence will not be admitted to contradict or vary a written contract, but it is equally well established that where only a part of a contract or agreement between parties is reduced to writing and signed by a party in connection with the performance of a verbal agreement between said parties, that part of the agreement which has not been reduced to writing may be shown by parol evidence. [Craig et al. v. Koss Const. Co. (Mo. App.), 69 S. W. (2d) 964, 966.]

It has also been held that the general rule admitting parol evidence of collateral verbal agreements is especially applicable in cases where such agreements are shown to have been made as an inducement to a party to enter into a written agreement. [Owsley v. Jackson, 163 Mo. App. 11, 19, 144 S. W. 154.]

The record in this case discloses that the verbal agreement between plaintiff and defendant, shown by the evidence complained of, was the inducement that caused defendant to sign the written orders when they were presented, and that the signing of such orders was but a step in carrying out such verbal agreement. Instead of being in conflict with each other, the written order and the verbal agreement are in harmony and taken together constituted the entire agreement between the parties.

This is an action at law and, as heretofore stated, it was tried before the circuit court without a jury. No instructions were asked or given. In such a situation it is the general rule that the judgment of the trial court should not be disturbed if upon any reasonable theory of the law and the facts it can be sustained. [Zeitinger v. Hargadine McKittrick D. G. Co., 298 Mo. 461, 250 S. W. 913.]

We hold that the evidence complained of herein was properly admitted and that it was sufficient to sustain the judgment of the court. It follows that the judgment in favor of defendant should be affirmed, and it is so ordered. *Hostetter, P. J.,* and *Becker, J.,* concur.