E. W. FRANCIS, d/b/a E. W. Francis & Company (Plaintiff), Respondent,

v.

John A. SALEEBY (Defendant), Appellant.

No. 29193.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1955.

Motion for Rehearing or for Transfer to Supreme Court Denied Oct. 13, 1955.

Not to be reported in State Reports.

Ziercher & Tzinberg, Erwin Tzinberg, Clayton, for appellant.

Sidel & Sandweiss, Jerome W. Sidel, Jerome W. Sandweiss, St. Louis, for respondent.

**JAMES D. CLEMENS, Special Judge.**

Plaintiff, a real estate broker, had a verdict and judgment in his suit for a $1,500 real estate commission, and defendant land owner appeals.

Plaintiff's theory is that after defendant had listed his property for sale, plaintiff came forward with a ready, willing and able buyer, but that defendant then reneged. Defendant seeks to excuse himself from paying the commission because (1) he agreed with plaintiff to exchange his property rather than sell it, and (2) plaintiff was (a) planning to purchase the property for himself or (b) acting in a dual capacity for an undisclosed purchaser as well as for the defendant.

The facts: Plaintiff, through his salesman, W. M. Francis, sought out the defendant, soliciting employment in the sale of defendant's house and lot near the expanding business district of Clayton. Defendant set a net price of $28,500 and signed a five-day exclusive listing contract, in conventional form, showing a $30,000 gross selling price and agreeing to pay a 5% commission. Plaintiff went directly to a Mr. Charles Andrews, president of Garland, Incorporated, knowing that company wanted a parking lot at that location. Plaintiff offered defendant's property for sale at $30,000, which was in due course accepted. Mr. Andrews gave plaintiff his company's check for $1,000 as a down payment, but stated that his company wanted no publicity about the sale until it was actually completed. So it was agreed that W. M. Francis would act as a straw party for the buyer. Accordingly, plaintiff issued his own $1,000 cashier's check, payable to defendant, and prepared and signed a sales contract naming W. M. Francis as the buyer.

Within the five-day period, plaintiff presented the cashier's check and sales contract to defendant for execution. According to plaintiff, the defendant was then told that W. M. Francis was acting as a straw party for the buyer. And, according to plaintiff, defendant then said "his wife in Brooklyn had a better deal", that "he'd have to have time to think it over", and an appointment was made for a later date, which defendant failed to keep. Defendant's version of this meeting with plaintiff is rather nebulous. He says plaintiff wanted the signature of defendant's wife, and that he, the defendant, objected to the contract because there was some property to be traded. But, defendant then made no inquiry as to who the actual buyer was. Plaintiff kept trying to locate defendant, without success, and finally left the contract and check with defendant's son. This suit followed.

Defendant's answer admitted execution of the listing contract but claimed that it was given for the purpose of trading rather than selling his property. Further, defendant pleaded that plaintiff had not produced a buyer, but instead was trying to buy the property himself.

At the close of plaintiff's case, defendant by leave of Court amended his answer to plead dual agency of the plaintiff for both the defendant and an undisclosed buyer. After both parties had rested, and the instructions had been settled, the Court permitted defendant to re-open his case, to enable one of his attorneys to testify. The essence of this testimony was that about a week after the listing contract had expired the attorney called plaintiff into his office to find out the identity of the real purchaser,

and that plaintiff declined to reveal this information to him. Plaintiff and a mutual acquaintance who was present said the interview concerned defendant's liability for plaintiff's commission, and denied that the identity of the purchaser was requested or even discussed.

Defendant's motions for directed verdict were denied. This case went to the jury on plaintiff's instruction hypothesizing his theory. The Court instructed a verdict for defendant if plaintiff acted as agent for both defendant and the buyer, but by another instruction told the jury that if plaintiff acted as a straw party for the buyer in order to avoid public disclosure of its identity, such fact alone would not make plaintiff the buyer's agent.

Defendant first claims error in the Court's refusal to allow him to testify to certain conversations between him and plaintiff contemporaneous with the execution of the listing contract. Defendant pleaded that the listing contract was not the entire agreement, but was given for the sole purpose of authorizing plaintiff to exchange his property for other real estate and not for the sale of his property. Defendant did not plead fraud or mistake. He offered to testify that it was understood and intended by the parties that the only purpose of signing the listing contract was to "arrange an exchange with Garland's between that piece of property and part of the property further out on Forsyth", and that it was not intended or understood "to be a listing contract for the sale of said property on the open market." The proffer was refused on the ground that it ran across the grain of the parol evidence rule. Defendant further objects to the trial Court's refusal of his instructions submitting the issue to the jury.

■ The defendant is trying to use parol evidence to escape the clutches of an unambiguous contract. In the absence of fraud or mistake this rarely can be done. State ex rel. and to Use of Alport v. Boyle-Pryor Constr. Co., 352 Mo. 1061, 180 S.W.2d 727, 730; Abrahams & Son Const. Co. v. Osterholm, Mo.App., 136 S.W.2d 86, loc. cit. 92. Defendant launches a three-pronged attack at the trial court's adherence to the parol evidence rule. First, defendant argues that he should have been permitted to testify that along with the listing contract there was a separate contemporaneous verbal contract for the exchange of his property, and cites the case of Mitchell v. Philippi, 359 Mo. 754, 223 S.W.2d 441, loc. cit. 444. There is such an exception to the parol evidence rule, 32 C.J.S., Evidence, § 1003 j, p. 997, but it comes into play only when the verbal contract is separate from and not in conflict with the written contract. As said by Judge Ellison in Sunderland v. Hackney Mfg. Co., 192 Mo.App. 287, 181 S.W. 1192, 1193, and followed in Nickerson v. Whalen, Mo.App., 253 S.W.2d 502: " * * * The verbal collateral agreement must be independent and distinct from the written agreement, and must not be inconsistent with it. And it must not be so closely connected with the transaction as to form a part of it." This same restraint upon this exception is expressed in defendant's cited case of Mitchell v. Philippi. A quick glance at the defendant's pleading and proffer will suffice to show that the barb of his attack is aimed at the very vitals of the listing contract. The proffered verbal agreement is not only not independent of the listing contract, but it is utterly inconsistent with it.

Secondly, the defendant having pleaded that the written listing contract was not the entire agreement between the parties, now argues that the proffered testimony should have been admitted to so show. That, standing alone, would bring him within another exception to the parol evidence rule, whereby one may show that the parties' agreement was partly written and partly oral. Such an exception does exist, but is limited to instances where the verbal portion of the agreement is not repugnant to the written part. 32 C.J.S., Evidence, § 1006 b, p. 1013; Warinner v. Nugent, 362 Mo. 233, 240 S.W.2d 941, 26 A.L.R.2d 278; and Liemke Co. v. Krekeler Grocer Co., 231 Mo.App. 169, 95 S.W.2d 820, loc. cit. 825, where this court applied the exception where "the written order and the verbal agreement are in harmony". There is a clashing here, not harmony.

Third, the defendant claims he should have been permitted to show that the parties treated the listing contract as one for exchange, and he now argues that the parties to a written contract may modify it verbally. Even so, that would assume an initial meeting of the minds, which defendant has specifically denied by his pleadings, evidence and argument.

We hold that the trial court properly turned his back upon the defendant's proffered verbal testimony as to intentions and understandings which did violence to the terms of his written contract. It follows that the defendant's instructions on the subject were properly refused.

█  Plaintiff's main instruction directed a verdict in the fixed sum of $1,500 which was the amount of the agreed compensation. Defendant now says that the amount should have been left to the jury, and cites tort cases involving compensatory damages. Here, the suit was on contract, not quantum meruit, and the amount of damages was not an issue. It would have been error for the Court to let the jury roam in this field. Doll v. Purple Shoppe, 230 Mo.App. 256, 90 S.W. 2d 181, loc. cit. 185; Budd v. Hoffheimer, 52 Mo. 297.

Defendant's main effort here is directed to the dual agency defense. He insists that the trial court should have directed a verdict for him because plaintiff's own evidence showed this denounced relationship, and that the Court erred in telling the jury that a straw party was not necessarily an agent.

█  Certainly the law will not condone duplicity by an agent to his principal's damage. As said in Restatement of the Law of Agency, Section 391, " * * * an agent is subject to a duty to his principal not to act on behalf of an adverse party in a transaction connected with his agency." But this is there said to be true only if such dealings with the adverse party are inconsistent with the agent's duties to his principal.

Defendant's cited cases relating to dual agency and the duty of an agent to disclose information to his principal have been examined to find a logical application to the facts here. They involve instances in which the agent was employed by and sought payment from adverse principals, and instances where the agent's actions were fraudulent, to his principal's loss and his own gain. More in point are two cases cited by plaintiff. In Maddux v. St. Louis Union Trust Co., 186 Mo.App. 138, 171 S.W. 669, 670, the broker was first sought out by a prospective buyer of investment property. He then went to the seller and got a listing contract. After negotiating with both parties, the broker brought about a contract of sale. In a suit against the seller for his agreed commission, the Court directed a defendant verdict if the broker represented both buyer and seller. This Court acknowledged the dual agency doctrine, but said it " * * * proceeds on the ground of fraud and bad faith", and convicted the trial Court of error for submitting the dual agency issue to the jury in the absence of substantial evidence of fraud and bad faith.

And, in Klein v. Terminal Railway Ass'n, Mo.App., 268 S.W. 660, loc. cit. 664, this Court said: "The general rule is well settled that a broker must act with entire good faith toward his principal, and must disclose to his principal all facts within his knowledge which may be material relating to the matter in which he is employed, or which might influence his principal in his action, and if the broker fails to come up to this standard of duty he cannot recover his commission. And there are cases in which brokers have been denied the right to recover their commissions on sales for failure to disclose to their principals the names of the purchasers. It has never been held however, that the mere failure to disclose the name of the purchaser, without more, would defeat the broker's recovery. Fraud is an affirmative defense and must be proved. It is never presumed. As a rule, mere deception without injury or prejudice is not fraud. Certainly the mere failure on the part of the broker to disclose to his principal the name of the real purchaser of the property sold, without any showing that the principal was or could have been in any way prejudiced or injured thereby, ought not to defeat the broker in his suit for commissions."

Under cross-examination, the plaintiff and Charles Andrews both acknowledged and denied that plaintiff acted as Garland's "agent" and that he "represented" the company in their dealings following the listing contract. Both categorically denied that plaintiff had been employed to buy defendant's property and that plaintiff was to be compensated in any way by Garlands.

 By the very nature of his work, a broker must deal with both buyer and seller. The naked, self-contradicted statements of plaintiff and Charles Andrews that plaintiff was the buyer's "agent" and that he "represented" the buyer, were at most their own conclusions of law. This could not conceivably warrant the trial court in taking plaintiff's case away from the jury, as urged by defendant.

Although there was neither pleading or proof of fraud, nor that defendant had been harmed by non-disclosure of the buyer's name, the court directed a verdict for defendant upon a mere showing that plaintiff was the agent for the buyer and that he did not inform the defendant thereof. Under the Maddux and Klein cases, this was far more than the defendant was entitled to, and yet the jury still resolved the issue against defendant.

This asserted defense of dual agency seems to have been brought into the law suit only after the trial was well under way. If the defendant did not want to sell as agreed by his listing contract because he felt the plaintiff had not disclosed the buyer's identity, he should have said so at the time. Instead he merely said his wife in Brooklyn had a better deal or that there was to be a trade. As stated in the annotation to Moss v. Warns, 245 Wis. 587, 15 N.W.2d 786, 156 A.L.R. 598: "* * * where land owner has rejected an offer for his land without objecting to the failure of the broker to introduce the customer or to reveal the customer's name, such failure is no defense to the action for compensation." As said by Judge Lamm in Thompson v. St. Charles County, 227 Mo. 220, 126 S.W. 1044, 1048, "Who does not speak when he should may not when he would."

We hold that the defendant's pleading and evidence on the defense of dual agency did not entitle him to go to the jury on the issue, but inasmuch as it was submitted, he is doubly precluded by the jury's verdict.

Judgment affirmed.

ANDERSON, P. J., and MATTHES, J., concur.