E. N. PERRY, Appellant, v. F. M. VANMATRE, Respondent.

**Springfield Court of Appeals, December 11, 1913.**

1. **APPELLATE PRACTICE: Instructions: Not Before Appellate Court in Record.** Where a record discloses that other instructions were given which are not stated, the appellate court cannot reverse for the giving of instructions which do not involve some substantial error prejudicial to the appellant.

2. **INSTRUCTIONS: Erroneous but not Prejudicial: Reversal not Warranted.** To warrant a reversal an erroneous instruction must also be prejudical under Secs. 2082 and 1850, R. S. 1909,

3. ————: **Facts in Issue: Assumption of.** To assume facts which are in issue and embody them in instructions is erroneous.

4. ————: **Variance in Expressions: Immaterial When.** In an action for the price of a jack, under the warranty as pleaded the jack was represented to be a "good breeder and a sure foal getter." Defendant, without objection, testified that the seller represented the jack to be a "great breeder." *Held*, that an instruction on the warranty was not erroneous because of the use of the expression "great breeder."

5. ————: **Conflict in.** It is no objection to an instruction, correct in itself, that it conflicts with erroneous instructions.

6. ————: ————. In an action for the price of a jack a double warranty was set up in the answer, that the animal was a good breeder and was sound. Plaintiff secured an instruction containing but half the alleged warranty. *Held*, that an instruction for defendant, covering the entire warranty, was not erroneous in that it conflicted with plaintiff's instruction.

7. ————: **Covering Entire Case: Must Include What.** An instruction, which purports to cover the entire case and directs a finding, must not omit any material fact within the just scope of the pleadings and evidence.

8. ————: **Sales: Warranty.** In an action for the price of a jack the jury was instructed to find for the defendant if plaintiff had warranted the animal sold to be sound and a good breeder and if he was not as warranted. *Held*, not erroneous in that it did not fix any time at which or within which the alleged warranty must be found to be operative.

9. **SALES: Warranty: Breach of: Question for Jury.** Under an express warranty as to soundness, where a breach is alleged

because of a latent defect or unsoundness, it is a question for the jury to determine from the evidence whether the unsoundness or defect existed at the time of the sale.

10. ――――: ――――: ――――: **What is.** The warranty that an animal is sound and in a healthy condition is breached if the seeds of disease were in the animal on the date of the sale and from that condition his unfitness developed.

11. ――――: ――――: ――――: **Evidence.** Evidence examined and reviewed in an action for the price of a jack, defended on the theory of an alleged breach of warranty that the animal was sound and a good breeder. *Held*, sufficient to sustain the jury's finding that the animal on the date of the sale was not as warranted.

12. **EVIDENCE: Cumulative: Admission of: Not Reversible Error.** Evidence which is merely cumulative and which covers only matters comprehended within other evidence which was admitted without objection, though erroneous, does not constitute reversible error.

13. ――――: **Erroneous Ruling: When Harmless.** Where a question put to a witness was not answered, an erroneous overruling of an objection to the question was harmless.

Appeal from McDonald County Circuit Court.—*Hon. Carr McNatt*, Judge.

AFFIRMED.

*J. A. Sturges* for appellant.

(1) Instructions A and B given for the defendant are in direct conflict with No. 1 given for plaintiff. This is reversible error. Bluedorn v. Railroad, 108 Mo. 449; Baker v. Railroad, 122 Mo. 595; Frederick v. Alger, 88 Mo. 602; Stone v. Hunt, 94 Mo. 479; Mansur-Tibbetts Co. v. Richie, 143 Mo. 612; Majtylock v. Coal Co., 188 Mo. 283; Sheperd v. Transit Co., 189 Mo. 373. (2) The instructions for defendant do not conform to the defense set up in the answer. Houston v. Tyler, 140 Mo. 264; Burk v. Pence, 206 Mo. 332. (3) Defendant sets up an express warranty and it was error to instruct on an implied warranty. Houston v. Taylor, 140 Mo. 263; Pavement Co. v. Smith, 17 Mo. App.

264; Fruit & Truck Assn. v. Hartman, 146 Mo. App. 168. (4) There was error in admitting evidence, as to the condition of the jack shortly before he died, and at the same time conditionally excluding it from the jury.

*O. R. Puckett* for respondent.

(1) A failure to file a reply when a reply is required, or the failure of a reply to deny certain material facts averred in the answer, is an admission of the truth of the material allegations of the answer not denied. 31 Cyc. 264; St. Joseph v. Gibson, 110 Mo. App. 237; Huber v. Hunter, 87 Mo. App. 50. (2) While an express warranty will not include an implied one about other matters, it will as to matters the former embraces. Fruit Assn. v. Hartman, 146 Mo. App. 155. (3) Instructions A and B state the law of this case applicable to the pleadings and evidence. Danforth v. Crookshanks, 68 Mo. App. 311; Young v. Van Natta, 113 Mo. App. 550; Moore v. Emerson, 63 Mo. App. 137; Compton v. Parsons, 76 Mo. 455; Murphy v. Gay, 37 Mo. 535; Brown v. Weldon, 99 Mo. 567; 35 Cyc. 380, 381, 388, 393, 400. (4) Instructions A and B are not in conflict with instruction No. 1. They are simply broader than instruction No. 1, which does not include all the law of the case.

FARRINGTON, J.—Rube, a big Kentucky jackass, is the subject of this action. Rube died before the litigation commenced and knows nothing of the trouble he left behind. An alleged warranty concerning what he was and what he was capable of doing at the time he was sold to defendant by the plaintiff is presented for review.

The petition counts on a note for $1000, given by defendant to plaintiff in consideration of two jacks, Rube and Frank, on which note with interest, after

deducting credits, there was alleged to be due the sum of $750.

Defendant in his answer admitted buying the jacks and executing the note, but pleaded:

"That said jacks were purchased to be used for breeding purposes and to be stood by defendant at his farm in this county and to be let to service of mares on custom for profit, which fact was well known to plaintiff at the time; that plaintiff, well knowing the purpose for which defendant wanted said jacks, and in order to induce him to make said purchase, represented to defendant that said jacks were sound and healthy; and the larger jack, Rube, was a good breeder and sure foal getter, and defendant, relying on plaintiff's said representations, was induced thereby to purchase said jacks and execute the note sued on; that the jack, Rube, was unsound and unhealthy, was not a good breeder and was not a sure foal getter; that he was infected by a secret malady and an undeveloped latent disease at the time, and shortly thereafter his legs and body broke out in enormous sores, his hair came off in large quantities, he refused to eat and continued to decline from the date of his purchase until the month of October, 1910, when he died. That the mares served by him failed to get with foal, and he was worthless for the purpose for which he was purchased, or for any other purpose. That the relative value of the jack, Frank, does not exceed $500 on the basis of the agreed value of $1000 for the two jacks. Wherefore, defendant says that after deducting the credits endorsed on said note, he is indebted to plaintiff in the sum of $67.55."

The reply is not set out in the abstract, but it is stated that the reply denied each and every allegation *as to failure of consideration.*

The jury returned a verdict for plaintiff for $67.55, and the case is here on his appeal.

Defendant's testimony as to the warranty is as follows: "He represented this jack, Rube, as a great breeder and a sure foal getter and sound and all right. Q. I believe you said these representations as to his being a good breeder and a sound animal were made by Mr. Perry before you bought the jack? A. Yes, sir."

Plaintiff as a witness did not deny this. Indeed, there is at no place in the record a denial that plaintiff made the warranty set up in defendant's answer. Plaintiff proceeded at the trial on the theory of admitting the making of the oral warranty but denying that a breach had occurred. Plaintiff and his witnesses testified that the jack at the time of the sale and at different times during the year 1909 after defendant bought him was fat—in good flesh—in good condition —in good life—quick to serve—appeared healthy and had no scars or sores.

As appellant's assignments of error do not require a detailed review of the evidence introduced at the trial, it is enough to say that as to the jack's condition at the time of the sale and for some months thereafter the evidence is in irreconcilable conflict. The purchase occurred at plaintiff's farm in Arkansas on March 16, 1909, and the jack died at defendant's farm in Missouri in October, 1910.

As it will be necessary to refer to the instructions from time to time throughout the opinion, they are here set out.

The court, at plaintiff's request, gave this instruction:

"1. The note sued on in this case was given as the purchase price of two jacks sold by the plaintiff to the defendant, and defendant seeks to avoid the payment of the balance due on the note on the ground that one of the jacks was diseased at the time of the sale and finally died of such disease. You are there-

fore instructed that it rests on the defendant to prove to your satisfaction by a preponderance of the evidence that the disease from which the jack died was not caused by the acts or treatment of him by the defendant, but existed at the time of such purchase and giving of said note.''

The court, at defendant's request, gave these instructions:

''A. The court instructs the jury that one who sells personal property to be used for a particular purpose, impliedly warrants that it is reasonably suitable for the use and purpose for which it is sold and purchased; therefore, if the jury believe and find from the evidence in this case, that the note sued on was given for the purchase of two jacks, to be used and stood for breeding purposes and to be let to service to mares on custom, and that the use and purpose for which defendant purchased said jacks was known to plaintiff when selling the same, and that the jack, Rube, was worthless for the purpose for which he was sold, and was of no value for any other purpose, then there was a partial failure of consideration for said note, leaving the jack, Frank, as the only consideration therefor, and your verdict should be in favor of the plaintiff for the balance you may find due on the jack, Frank, after deducting the credits endorsed on said note.

''B. The court instructs the jury that if you find and believe from the evidence that the note sued on was given for the purchase price of two jacks, and that the plaintiff then and there represented and stated that the jack, Rube, was a great breeder and a sure foal getter, sound and healthy, and that said jack was sold and purchased for breeding purposes for hire; and if you further find and believe from the testimony that the said jack Rube, was not a great breeder or not a sure foal getter, or that he was not sound and healthy, and that by reason of any or all of said facts, if you

believe them to be facts, said jack, Rube, was worthless in value for breeding purposes, and had no value for any other purpose, then there was a partial failure of consideration for said note, and your verdict should be in favor of the plaintiff for balance you may find to be due him on the jack, Frank, after deducting the credits on said note.''

It appears by appellant's motion for a new trial that another instruction, ''C,'' was given for the defendant, but it is not set out in this record. Since appellant relies almost entirely on error in the instructions for reversal, he should have brought all the instructions to this court. [Guinn v. Boas, 31 Mo. App. l. c. 134.] The rule was long ago announced that ''where a record discloses that other instructions were given which are not stated, we cannot reverse for the giving of instructions which do not involve some substantial error prejudicial to the appellant.'' [Haegele v. Western Stove Co., 29 Mo. App. l. c. 494; Harris v. Powell, 56 Mo. App. l. c. 26.]

Appellant contends that since respondent defended by alleging an express warranty in his answer, it was error to instruct on an implied warranty as was done by instruction ''A.''

The plaintiff, having to all intents and purposes admitted that he made the warranty alleged in defendant's answer, to-wit, that the jack was sound and healthy, a good breeder and sure foal getter, could not complain of an instruction on such warranty, for example, an instruction along the line followed in instruction ''B.'' The undisputed evidence is that defendant bought the jack to use in the breeding business, and that plaintiff knew this fact, and that a jack worthless for breeding purposes is entirely worthless for any purpose. It is manifest that the express warranty alleged and proved was no greater than the

implied warranty referred to in instruction "A." It must be assumed that the jury believed the express warranty was made, since the plaintiff did not by pleading or proof deny that it was made, and the only issuable fact for the jury's determination was whether there was a breach of the warranty. Therefore, although an express warranty is said to exclude an implied warranty as to matters the former embraces (Alvin Fruit & Truck Assn. v. Hartman, 146 Mo. App. l. c. 168, 123 S. W. 957), and conceding that the implied warranty set up in defendant's instruction "A" was fully embraced in the express warranty set up in defendant's instruction "B," and that the trial court erred in giving instruction "A," it is manifest that under the peculiar circumstances of this case the error was nonprejudicial. Wherein was plaintiff prejudiced by the jury being informed that the law implied a warranty which defendant admitted he expressly made? We are required by statute (Secs. 2082 and 1850, R. S. 1909) to disregard such errors as produce no injury. An erroneous instruction must be prejudicial in order to warrant a reversal. [Bradford v. Railroad, 136 Mo. App. l. c. 711, 119 S. W. 32.] "Where an error in an instruction to a jury occurs at a trial, and it is followed by a result prejudicial to the excepting party (as, for instance in this case, by an adverse verdict) a reviewing court cannot properly consider the error otherwise than as a cause contributing to that result, unless the exact bearing it has had thereon can be discerned, and is found to have been harmless to the rights of the complaining party. This is all that is meant by the declaration that has occasionally been made to the effect that 'error is presumptively prejudicial.' " [Morton v. Heidorn, 135 Mo. l. c. 617, 618, 37 S. W. 504.] The burden is always on the appellant to convince the court, not only that error was committed against him, but that it was prejudicial. [Lower

v. Coal & Min. Co., 142 Mo. App. 351, 126 S. W. 987.]
When no injury could result from the giving of an
erroneous instruction, it is no cause for disturbing the
judgment. [Gray v. The Mo. R. P. Co., 64
Mo. l. c. 50; Cordes v. Stranszer, 8 Mo. App. 61.] Upon
this record we are convinced that the substantial rights
of the appellant were in no way prejudiced by the giv-
ing of instruction "A." [See, Haines v. Neece, 116
Mo. App. 499, 92 S. W. 919.]

Appellant contends that defendant's instructions
do not conform to the pleadings; that defendant's
answer went into detail concerning an alleged disease,
that the case was tried on the theory that the jack was
so diseased and died therefrom, that instruction "A"
entirely ignores any disease and that instruction "B"
merely mentions it. The gist of the warranty alleged
in defendant's answer is that the jack was sound and
healthy, a good breeder and sure foal getter. In plead-
ing the breach, it was alleged that the jack was not a
good breeder and sure foal getter, and was unsound
and unhealthy, going on to set out the details concern-
ing the alleged unhealthy condition—merely pleading
evidence. The evidence before the jury was squarely
in conflict as to the healthy or unhealthy condition of
the jack at the time of the sale. Does appellant ask
us to hold that the trial court should have lifted bodily
from the answer the evidentiary facts pleaded—facts
which were disputed—and placed them in the instruc-
tion and told the jury that if those facts were estab-
lished to their satisfaction, the animal was unhealthy?
The answer to this contention is that it is error in in-
structions to assume facts which are in issue. [Cald-
well v. Stephens, 57 Mo. 589.]

As another branch of this contention it is pointed
out that the answer used the term "good breeder,"
whereas the term "great breeder" is used in instruc-
tion "B." The warranty, as pleaded, was that the

jack was a "good breeder and sure foal getter." Defendant testified that plaintiff represented this jack as a *great* breeder. *No objection was made.* [See, Bird & Co. v. Gustin-Boyer Supply Co., 123 Mo. App. 36, 38, 99 S. W. 775; Liddell v. Fisher, 48 Mo. App. 449.] "The rule is, that a party may, during a trial, object to evidence on the ground that it is irrelevant to the issue, or he may raise the question of variance after it is introduced, but if he does neither, the trial court has the right to instruct on the evidence as introduced." [Mitchell v. Samford, 149 Mo. App. 1. c. 77, 130 S. W. 99.] "If a variance occurs it may be either material or immaterial. If immaterial, the trial court, in the exercise of its discretion, may direct the facts to be found according to the evidence or order an immediate amendment without costs." [Hensler v. Stix, 113 Mo. App. 1. c. 175, 176, 88 S. W. 108.] In the case at bar, under the authorities the trial court pursued the proper course in the instruction. Nor is there any difference between a good breeder and a great breeder except possibly in degree; if there is any difference, a great breeder would be a more than ordinarily good breeder.

It is insisted that defendant's instruction "B" is in conflict with plaintiff's instruction No. 1. It is obvious that the latter does not contain all the elements which defendant was entitled to have submitted to the jury. The warranty set up in the answer was double— (1) that the jack was sound and healthy; (2) that the jack was a good breeder and sure foal getter. Merely because plaintiff was successful in having the court give an instruction which contained but half the alleged warranty should afford no ground for a contention in this court that the trial court, by giving an instruction at defendant's request which did contain both branches of the alleged warranty—that is, which covered the whole case—was guilty of "giving con-

flicting instructions.'' The converse of this situation is found in the case of Kelley v. United Rys. Co., 153 Mo. App. 114, 132 S. W. 269, where plaintiff's instruction covered the whole case, while defendant's instructions erroneously stated but one of the two elements which were necessary to be found before defendant would be relieved of liability, so that the instructions were in irreconcilable conflict. The *defendant* prevailed and the trial court granted plaintiff a new trial because of the conflict in the instructions. In upholding this action of the trial court, the following language was used (l. c. 119): ''The rule requires instructions to be in harmony with each other and if it appears those given for one side are sound in doctrine and those for the other are conflicting therewith as to grounds of recovery or defense, the verdict should be set aside if it is in favor of the party for whom the erroneous instruction is given, unless it be in a case where on all the proof it appears the verdict is for the right party.'' But in the case at bar, the verdict was not in favor of the party for whom the erroneous instruction was given. However, this contention is clearly overruled by the case of Moore v. St. Louis T. Co., 193 Mo. 411, 91 S. W. 1060, where it is distinctly held that it is no objection to an instruction, correct in itself, that it conflicts with erroneous instructions. Plaintiff's instruction was clearly erroneous, for an instruction which purports to cover the case and directs a finding must not omit any material defense within the just scope of the pleadings and evidence. [Link v. Westerman, 80 Mo. App. l. c. 596.]

Now it is contended that instruction ''B'' is not a correct instruction but is erroneous in that it did not fix any time at which or within which the alleged warranty must be found to be operative. We do not believe the jury was misled in this particular. The answer had stated that the warranty was breached at

the time the sale took place and defendant testified that the conditions complained of existed from the beginning. The instruction treats of an alleged warranty made at the time of the sale and sets forth the elements constituting the alleged warranty, i. e., that the jack was sound and healthy, and was a good breeder and sure foal getter, and then tells the jury that if they believe the jack *was* not sound and healthy or *was* not a good breeder and sure foal getter, etc., etc. We do not think this was calculated to mislead the jury in this case, but that the jury as reasonable men would understand that the condition must have existed at the time of the sale and not have been contracted or brought about months or years afterward. [See, Layson v. Wilson, 37 Mo. App. 636; Hobart v. Young, 12 L. R. A. 693, 695, 696.]

The time was clearly fixed in the instructions given as of the date of the sale and the breach went to the latent and hidden disease. Defendant charged there was a breach of the warranty that the jack was sound and healthy owing to the diseased condition, and that the jack was not a good breeder and sure foal getter because of the disease. The definition of "disease," as given in Cyc. (Vol. 14, p. 385) is: "Any derangement of the functions or alteration of the structure of the animal organs; a morbid condition, resulting from some functional disturbance or failure of physical condition which tends to undermine the constitution."

The evidence is undisputed that at the time defendant purchased the jack there was no apparent disease or symptoms from which the defendant should have known of any latent or hidden disease. Where an express warranty as to soundness is made and a breach is alleged because of a latent defect or a latent unsoundness, it becomes a question for the jury to determine from the evidence whether the unsoundness or unhealthy condition existed at the time of the sale. In determining this question they will of course consider

the evidence of the plaintiff that the jack, the subject of the warranty, was in good, sound condition and a good breeder up to the time the sale was made. On the other hand, they will consider the evidence of the defendant showing the symptoms as they developed, the appearance of the disease, and the unfitness of the animal for breeding purposes. The defendant swore positively that the jack would eat very little and immediately began to decline in health from the date of sale to the time it died. Likewise, his testimony was positive that among forty-nine mares served by this jack only eleven or twelve became in foal, and that the average jack that is a great breeder and sure foal getter will foal from sixty-five to eighty-five per cent of the mares served. His evidence tended to show the condition of the jack as soon as purchased, to-wit, that he was not a great breeder and sure foal getter, that he immediately began to decline in weight, appeared dispirited, and gradually declined until sores came and he died, and this was evidence from which the jury had a right to draw an inference that the jack was diseased or that this condition of the jack existed in a latent or hidden form on the date of the sale. If the seeds of disease were in the animal on the date of the sale and from that condition his unfitness developed, the law is settled that the warranty of sound and healthy condition is breached. [See, Woodbury v. Robbins, 64 Mass. 520.] The evidence that the jack refused to eat, was dispirited, and was not a great breeder and sure foal getter, was enough to justify the jury in finding that both the alleged warranties were breached, without having to go further and find that the sores caused the infirmity, as it is the holding of many courts that a warranty of soundness or healthy condition is breached by a temporary ailment or disease, provided the temporary ailment or disease renders the animal unfit for the use to which he is to

be adapted. [See Roberts v. Jenkins, 21 N. H. 116, 53 Am. Dec. 16.] In Elton v. Brogden, 4 Camp. 281, Lord ELLENBOROUGH said: "I have always held, and now hold, that a warranty of soundness is broken, if the animal, at the time of the sale, had any infirmity upon him which rendered him less fit for present service." It is held in Kornogay v. White, 10 Ala. 255, that a warranty of soundness covers all diseases which affect the value of the things sold, whether temporary or permanent; and to the same effect is Schurtz v. Kleinmeyer, 36 Iowa, 392.

In determining questions as to soundness on a certain date, where the proof is that prior to that date the animal was sound and subsequent to that date he was unsound, the only way to proceed is for the jury from these facts to draw an inference concerning the condition on the date of the sale. Such a fact cannot, in a case like the present, be positively and actually known. A finding must necessarily be based on inference; and if the evidence that the jack was healthy prior to a certain date is true, and it should be shown that he was not a great breeder and sure foal getter immediately after the sale on said date, it would certainly not be an unwarranted inference that this changed condition was brought about by disease, because any animal that is shown to be capable of procreating its species necessarily continues capable until there is some derangement of the functions or alteration of the structure of the animal organs, which is *disease*. The testimony of the defendant that the jack was thin on the day he went to get it, and the explanation made by plaintiff's agent, the keeper, that the jack was thin because the timothy hay had burned and that it did not like to eat prairie hay, followed by the testimony of defendant that he procured timothy hay for the jack after taking it home and that it refused to eat the same and continued to lose in weight, would

176 Mo. App. 8

certainly be some evidence that the condition of unfitness and disease existed on the date of the sale. The jury having so found upon sufficient evidence, its verdict will not be disturbed.

Appellant complains of error in the admission of testimony. Defendant's witness, Jones, had stated that he commenced working for defendant in March, 1910. He was then asked this question: "Try and describe the appearance of that jack as to whether he appeared healthy and sound or diseased at the time you first knew him in March, 1910?" He answered: "When I first commenced working there he had sores from his knee down." No objection was made. Then the witness was told to "describe these sores to the jury," whereupon plaintiff objected "to any sores that come there a year after the jack was bought" which was overruled and plaintiff excepted. The witness answered: "Those sores were there when I commenced working there and they became worse during the season." The defendant, as a witness, had previously testified fully as to the sores, covering the time witness Jones testified to, and no objection had been made by the plaintiff, so that Jones' testimony, at which the objection was aimed, was, at most, cumulative, and even though its reception could be said to be erroneous, it would not constitute reversible error. [Powers v. Union Ry. Co., 60 Mo. App. l. c. 482.]

Appellant presses another point. Defendant's witness Jones was asked on direct examination: "Do you know of any veterinary surgeon who treated the jack during that time?" Plaintiff objected, stating grounds, and the court overruled the objection and plaintiff excepted. However, the contention falls down by reason of the fact that the witness did not answer the question and no other attempt was made to elicit the information called for by the question objected to.

Finding no reversible error, the judgment is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.