THE PHELPS STONE & SUPPLY COMPANY, APPELLANT, v. THOMAS F. NORTON ET AL., RESPONDENTS.—52 S. W. (2d) 413.

Kansas City Court of Appeals. August 28, 1932.

*Woodruff & Gard* for appellant.

*Cooper, Neel, Kemp & Sutherland* and *Frank J. Rogers* for respondents.

CAMPBELL, C.—On March 11, 1920, plaintiff as lessor and defendants as lessees, entered into a contract in writing by the terms of which plaintiff demised to defendants land situate in Jackson county, Missouri, and in Wyandotte county, Kansas, for the purpose of quarrying, crushing and selling rock and stone located on said lands.

It is provided in the lease that the land was demised from March 11, 1920, to March 10, 1925; that defendants would pay to plaintiff a royalty of twelve cents per cubic yard for each cubic yard of rock or stone quarried, taken or removed from said land; that the minimum royalty during each year of the five year term "shall be not less than $2500," and that defendants will pay to plaintiff a sum equal to one-fourth of said minimum royalty at the expiration of three months from the commencement of the term, "regardless of whether the measurements and calculations to determine the amount of rock and stone which has actually been quarried and removed from said land has then been made and completed, or whether the amount of rock and stone actually quarried and removed from said ledge or ledges would produce a royalty equal to said sum, and will pay a like sum to the lessor at the expiration of each and every three months' period thereafter throughout the term of this lease."

The lease also provides as follows:

"If within the five-year term hereby created, the lessees shall erect and construct upon the above described real estate, a modern rock crushing plant, having a capacity for crushing not less than one thousand (1000) cubic yards of rock per day, then, and in consideration thereof, the lessees shall have an exclusive option and right to have this lease, and the term created hereby extended and prolonged for an additional period or term of five years from the expiration of the term hereby created, at an increased minimum royalty one thousand dollars ($1000) per year, making the minimum annual royalty for such additional five year period or term, thirty-five hundred dollars ($3500) per year, payable quarterly as herein provided. In all other respects, the lease for such additional five year term or

period shall be upon the same terms and conditions, covenants and agreements contained in this lease.''

It is admitted that defendants entered upon the performance of the lease and during the first five years of the term thereby created, performed all of the conditions of the lease and paid all royalties due thereunder; that at the expiration of that term defendants continued in possession of the property, and that nothing was said by either of the parties relative to an extension of the lease; that defendants continued to operate the quarry until about March, 1927, at which time they ceased operation but continued to pay royalty as hereinafter stated, but failed and refused to pay the quarterly installments which plaintiff claims became due September 10, 1929, December 10, 1929, and March 10, 1930; that thereupon plaintiff brought suit seeking to recover said three installments of royalty and for breach of the conditions of lease relating to the removal of debris from the quarry.

The defendants' answer is a general denial and plea that all rents or royalty had been paid in accordance with the terms of the lease. Defendants also filed counterclaim seeking to recover an overpayment of royalty.

The cause was tried to the court and jury, verdict returned in favor of the defendants plaintiff's cause of action for the recovery of royalty and for plaintiff on the count for damages, and for defendants on their counterclaim. Plaintiff has appealed.

The assignments of error developed under points and authorities are: (1) That the written lease is clear in its terms, and therefore the court should have directed verdict for plaintiff for the minimum royalty upon the basis of $3500 per year; (2) that the court erred in giving defendants instructions Nos. 2 and 6; (3) that the allowance of interest on defendants counterclaim was erroneous, and (4) that the amount of damage awarded plaintiff is grossly inadequate.

In support of assignment of error No. 1 plaintiff argues that ''When the plaintiff billed the defendants and accepted payment on the basis of the increased royalty (which was done at the very first time there was occasion for it), plaintiff then became bound by the option provision of the lease and estopped from claiming that the plant was not of the required capacity.''

On this question the defendants say that the minimum royalty for the second period of five years was $2500 unless during the first five year period they erected on the premises a plant having a daily capacity of 1000 cubic yards of crushed rock, in which event if the lease was extended the minimum annual royalty would be $3500, and that whether or not defendants did erect a plant of such capacity, was a question of fact for the determination of the jury.

At the trial plaintiff's treasurer and manager in direct examination testified that defendants, during the first five years of the lease, constructed a crushing plant which, in his opinion, had a daily capacity of 1000 cubic yards of crushed rock.

The defendants' evidence on that subject was that the plant constructed by it had a daily capacity of 350 cubic yards. It is evident that the parties tried the cause upon the theory that defendants were not required to pay minimum royalty upon the basis of $3500 per year for the second five year period unless during the first five year term they had erected a plant having a daily capacity of 1000 cubic yards. That theory was the correct theory. It is conceded by both parties that the terms of the option provision of the contract are clear and unambiguous. Under the plain terms of the option provision defendants were not entitled to extend the life of the lease unless during the five year term they constructed a plant having a daily capacity of 1000 cubic yards of crushed rock, nor were they liable to pay royalty upon the basis of $3500 per annum thereafter unless such plant had been constructed. We apprehend that it will not be claimed that if, at the termination of the first five year period it was admitted that defendants had not constructed a plant having a daily capacity of 1000 cubic yards, they could compel plaintiff to extend the lease. When defendants held over after the expiration of the first five year period, without anything being said relative to the terms upon which they held, they were not liable for increased royalty unless they had the right to exercise and did exercise the option provision. [Liggett v. Exposition Company, 157 Mo. App. 108.]

It was shown that plaintiffs, on June 10, 1925, submitted bill for royalty for the sum of $847.08; that on December 10, 1925, plaintiff submitted bill for royalty for the three months' period from September 10, 1925, to December 10, 1925, in the sum of $697.20; that the bill for royalty submitted in June, 1926, was for the sum of $627, and that the bill submitted in December, 1926, was for $625. The first bill submitted by plaintiff to the defendants, in which reference is made to the claim that the minimum royalty was $3500 per year, is dated March 21, 1927. At that time defendants had ceased operation, presumably for the reason that the rock in the quarry had been condemned. Thereafter defendants paid to plaintiff, quarterly, the sum of $875 except for the three quarters ending March 10, 1930.

It is evident that plaintiff, in submitting bills for a sum less than the minimum royalty now claimed by it, was pursuing a course from which a jury could find that it was not claiming that defendants had constructed a plant having a capacity of 1000 cubic yards per day.

It is also evident that defendants, by paying royalty upon the basis of $875 for each three months during a part of the last five year term of the lease, were pursuing a course from which the trier of the fact could find that they recognized they had constructed a plant having a daily capacity of 1000 cubic yards. The mere fact that defendants assert that such payments were made by mistake, is not conclusive. The evidence in their behalf on that subject is that the payments were made by mistake, which evidence the plaintiff controverted, and hence the question was for the jury.

For the reasons stated, the request for directed verdict was well ruled.

Defendants' instruction No. 2 told the jury that "if you find and believe from the evidence in this case that the defendants have paid the plaintiff all royalty due from the defendants to plaintiff as provided by the terms of the lease offered in evidence," the verdict will be for the defendants on the royalty issue.

Plaintiff argues that the instruction submitted a question of law to the jury, in that the jury were permitted to construe the option provision of the lease. It is not proper to submit a question of law to a jury or to submit to a jury the legal effect of a contract. [McFarland v. Gillioz, 37 S. W. (2d) 911.] The instruction is undoubtedly erroneous in the respect stated; but we do not believe the judgment should be reversed for that reason. The case was tried below and is presented here upon the theory that there was no dispute as to the proper interpretation of the option provision of the lease. The rights of the parties on that issue turned on the question as to whether or not defendants, during the first five years of the lease, constructed a plant having a daily capacity of 1000 cubic yards. The issue is clearly stated in plaintiff's brief as follows:

"Thus the issue, and the only issue, presented on this phase of the case is that of whether the option provision of the lease by its terms justifies the position taken by the defendants, that they were to pay only $625 a quarter if they did not erect a crusher of this 1000 cubic yards capacity; or whether the option provision justifies the position of the plaintiff, that the condition about the new crusher was a condition, not to the increase of the minimum royalty but a condition precedent to the right to have the additional five year term —a condition solely for the benefit of the lessor, plaintiff in this case."

The quoted statement does not take unto consideration the theory upon which the cause was tried below. Considering the theory in the trial court, we do not believe that the instruction was reversibly erroneous. We are forbidden to reverse a judgment for any error "which shall not affect the substantial rights of the adverse party." [Section 821, Revised Statutes 1929; Maloney v. Bank, 288 Mo. 459;

Grubb v. Railway Company, 207 Mo. App. 28; Trust Company v. Surety Company, 285 Mo. 621.]

We will assume that the jury were men of intelligence, and hence understood the questions which they were called upon to decide. This view finds support in the verdict of the jury on defendants' counterclaim which will be discussed in passing upon the objections to defendants' instruction No. 6, which reads:

"The court instructs the jury that if you find and believe from the evidence in this case that the defendants overpaid the royalty due from the defendants to the plaintiff, under the terms of the lease in question; that is to say, if you find and believe from the evidence that the defendants paid the plaintiff more royalty than the terms of the lease in question call for, then, on defendants' counterclaim against the plaintiff, your verdict will be in favor of the defendants and against the plaintiff for whatever overpayment, if any you find from the evidence in this case was made by the defendants to the plaintiff.

"And the court further instructs you that by overpayment as used in this instruction, is meant any excess, if any, of payment made over and above whatever you find and believe from the evidence was fixed by the terms of the lease offered in evidence for the period of time or term by said lease."

What we have said in relation to defendants' instruction No. 2 is applicable to this instruction. The criticism of the instruction is the same as that leveled against said instruction No. 2. It is patent that the language of the instruction submitted to the jury a question of law, and it was therefore erroneous; but we do not believe the judgment should be reversed for that reason.

The amount of royalty paid by the defendants to the plaintiff is not disputed. The controversy is based upon the question as to the amount of minimum royalty for which the defendants were liable. Defendants paid nine installments of $875 each. They contend that they were liable to pay twelve installments of $625 each. Hence, if the defendants had not constructed a plant having a daily capacity of 1000 cubic yards, it is clear they have overpaid in the sum of $375, the amount of the verdict. From this it is clear that the jury was not misled, by the erroneous terms of the instruction, into the belief that they were interpreting the lease. The jury, as the verdict shows, merely determined the question as to whether or not defendants had constructed a crusher having a daily capacity of 1000 cubic yards of crushed rock. The verdict on the question of unpaid royalty presented by plaintiff's petition and the verdict on defendants' counterclaim are consistent.

The evidence in plaintiff's behalf that defendants had constructed a crusher having a daily capacity of 1000 cubic yards was slight.

The evidence on that question prepondered in favor of defendants. Upon considering the record, we hold that the instruction was not reversible erroneous. [State ex rel. v. Stone, 111 Mo. App. 346; 169 Mo. App. 284; 176 Mo. App. 100.]

The plaintiff presents the case here upon the theory that defendants by holding over, as a matter of law, became liable for an annual minimum royalty of $3500.

Plaintiff in its brief says:

"The written lease between the parties is entirely clear that the minimum royalty for the additional five years provided for by the option was $3500 per year, and this was confirmed by the action of the parties under the lease, so there was no jury question on this issue and the court should have directed a verdict for plaintiff."

It is further said in the brief that the testimony offered by plaintiff tending to show that the new plant constructed by defendants had a daily capacity of 1000 cubic yards was introduced "merely for the purpose of showing that the new plant was constructed and that the plaintiff was satisfied with it." Thus it appears that plaintiff has, in this court, abandoned the claim that defendants did *in fact* construct a plant having a daily capacity of 1000 cubic yards of crushed rock.

The defendants were not bound to pay a minimum royalty of $3500 per year unless the plant constructed by them had such daily capacity. If, as plaintiff says, its evidence on that subject was introduced merely to show the fact that a new plant was constructed and that plaintiff was satisfied with it, and not for the purpose of showing that the new plant had such capacity, and that the issue was one of law and not of fact, then defendants, upon our interpretation of the lease, were entitled to have verdict directed in their favor on the royalty issue and for recovery of overpayment, in which event the question as to whether or not the instructions complained of were erroneous, is immaterial.

It is insisted that the allowance of interest on defendants' counterclaim was erroneous. The interest was remitted and thus the error, if any, was cured.

The 4th assignment of error is that the amount of damages awarded plaintiff is grossly inadequate. There was evidence that plaintiff was entitled to recover a much larger sum. There was evidence on defendants' behalf that they had not breached the lease in the manner claimed by plaintiff. There was evidence that defendants left a small quantity of debris on the floor of the quarry. The weight and value of the evidence was for the jury and not for the court. The verdict met the approval of the trial court and we will not interfere. The judgment is affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is a-dopted as the opinion of the court. The judgment is affirmed. All concur.