Allen GREEN and Charles V. Cates,
Respondents,

v.

COOKE SALES and SERVICE, Inc.,
Appellant.

No. 22333.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1955.

Nolan M. Chapman, Don Chapman, No-lan M. Chapman, Jr., Chillicothe, for appellant.

Robison & Miller, Maysville, J. B. Beavers, Cameron, for respondents.

DEW, Presiding Judge.

The plaintiffs in this action sought to recover damages for breach of warranty on a contract of sale of a tractor and dozer. Plaintiffs recovered a verdict and judgment for $5,835. After its motion for a new trial was overruled, defendant appealed.

The petition is based on a written contract or order of purchase dated at Chilli-cothe, Missouri, on December 12, 1952, whereby, it is alleged, the defendant agreed in writing to sell, and the plaintiffs agreed to buy, one Allis-Chalmers Tractor with Gar Wood Dozer, and wherein the defendant agreed that the machines would have a new guaranty and warranty and were warranted to be of first class and superior quality. It is alleged that the machines were further warranted against parts and labor for a period of thirty days after purchase, and an additional sixty days on labor alone; that defendant knew of the nature of the work plaintiffs intended to use the machines for and warranted the same to be in all respects fit and proper for such use; that the total price of $7,905 was fully paid by the plaintiffs.

The petition further alleges that, in fact, the tractor and dozer were not of superior quality but were second-hand and of inferior quality, worth not to exceed $2,500; that, relying upon said warranty, plaintiffs attempted to use the machines and they would not run or operate and proved unfit for the use intended, and were not "free from motor parts or labor" for thirty days or sixty days; that plaintiffs have been caused to expend $531 for labor and repairs to make the machines operate, and have been damaged in the total sum of $5,936, for which judgment was prayed.

The answer denies the controversial allegations of the petition and further states that the tractor and dozer were used machinery; that defendant had agreed in the sales contract to furnish parts and labor to maintain the machines in running order for thirty days, and for sixty days to furnish the necessary labor, and the plaintiffs had agreed to furnish the parts therefor during such second period; that in compliance with such agreement defendant had furnished the labor and parts for such repair and maintenance during the thirty day period after purchase, and did for sixty days furnish the necessary labor therefor without charge, the plaintiffs furnishing the necessary parts. The answer admitted the payment of the agreed purchase price of $7,905.

The printed contract entered into by the parties, attached to the petition as an exhibit and introduced in evidence, is denominated a "Purchase Order", dated December 3, 1952, requesting the entering of an order by the plaintiffs f. o. b. Lawson, Missouri, for 1 H. D. 7 Gar Wood Dozer $7,750, sales tax $155, total $7,905. Immediately following the description of the machinery sold, there appeared in written form or typewriting, the words: .

"30 days—parts & labor furnished
60 days customer furnishes parts we furnish labor."

At the end of the instrument, immediately above the signatures, appears the printed paragraph: "It is understood that the machinery is sold by the Dealer with the standard warranty of the manufacturer. This warranty is the only warranty, either express, implied or statutory, upon which Machinery is sold".

The contract was signed by both plaintiffs and by Pete Igoe, and Walter L. Creason, agents of the defendant. The machines were delivered December 13, 1952.

The plaintiffs bought the machines while they were in the process of being assembled, saw the parts being installed, and knew that the finished product would be used machinery. Plaintiff Cates testified that when the deal was being closed and before the signing of the contract, he inquired of defendant's agent Creason what was the meaning of the "standard warranty of the manufacturer", referred to in the contract, and was told by Creason that it meant the "same as a new machine, within 30 days—* * * the parts and labor; sixty days we furnish the parts and they the labor".

Plaintiff Green testified that he also inquired at the time about the meaning of the warranty, and was told by Mr. Creason and Mr. Igoe that " * * * all parts would be replaced—when they was rebuilding the machine, absolutely guaranteed to go out and serve the person, what we wanted it for without any trouble, and all parts, or all trouble that developed in the machine with-

in 30 days, they would stand the labor and the repairs, and 60 days after or, yeah, 60 days I'd stand the reapirs and them the labor." He said he told the agents the kind of work they intended to do with the machines and was told by them that the machines were "Absolutely guaranteed to serve the purpose * * *".

The plaintiffs testified that within an hour after they started to use the machines, the hydraulic pump of the tractor failed to operate. In about ten days defendant removed it, took it to its shop in Chillicothe and repaired it. In about two days later the oil started leaking into the clutches and defendant removed the hydraulic rams which they overhauled within a week or ten days. About eleven days before the expiration of the thirty day period following the delivery of the machines, they broke down again. Not until some time in February did defendant send a man to look at the machines and then took them to the defendant's place in Chillicothe for repair. Plaintiff Cates called there the next day and defendant told him it was going to fix the machines. Cates inquired about the hydraulic pump and was told: "We'll put a new pump on". Cates asked: "Who's going to pay for this?" Defendant's agent replied: "We're going to fix it. We're getting tired of this, but, we're awful short of help." When plaintiffs called for the machines defendant demanded $531.82 for parts. The plaintiffs claim these were necessary for the repairs which were discovered within the 30 day period and which defendant had not properly repaired; that these consisted of the hydraulic pump, the blade, hydraulic rams, steering clutches, grease seals, tracks, rollers, crank arms and oil pressure. Plaintiffs paid defendant's charge of $531.82 in order to get the machines out, which they needed badly. In two days thereafter the machines stopped operation because of the grease seals, and plaintiffs finally engaged repairmen from Kansas City. Defendant had made no charge previous to its demand for $531.82 for services or parts.

Plaintiff Green testified that he signed the defendant's Exhibits A, B, and C, which

were, respectively, service reports dated December 26, 1952, January 16, 1953, and January 29, 1953, for a total of 13½ hours, 10 hours and 23½ hours, mechanical work supplied by defendant in amounts of $19.58, $14.50 and $25.87, his signature appearing on each after the printed words: "The Above Work Satisfactorily Completed". He explained in effect that he was made to understand that such signed statement was merely for the purpose of identifying the time and place of the work done on the report required of the mechanic by the defendant. Plaintiffs testified that the reasonable value of the machines as of the date of delivery was $2,500.

The agents of the defendant testified that plaintiffs several times saw the machines as they were being rebuilt and knew that they were used and not new; that they never told the plaintiffs that a new guaranty would be given on the machines or any other than the 30–60 day provisions written into the contract; that a standard manufacturer's warranty on a new machine is for 90 days, and is never given on a machine which is not new; that the 30–60 day guaranty is written into the sales contract only when the machine is a used one.

Defendant's agents further testified that when the hydraulic pump went bad the bearing went down with it and the cuttings chewed up the case, which caused a similar trouble later when the whole pump was torn down and new parts installed. He testified that no one can tell what causes the bearings of a machine to go down; that later it was discovered that the walls were scored and the hydraulic rams were replaced with rings and the walls were smoothed up. In January the plaintiffs called about the seals leaking in the final drive; they also complained of a broken spring leaking, which was repaired; that again in February, plaintiffs claimed that oil was still leaking in the steering clutches; that defendants then tore out the whole back end of the tractor and did not find any leaking grease, but new seals and a new starter were installed. The witness testified that: "We put the new hydraulic pump on that they (plaintiffs) decided that they was going to get one. They decided they wanted a pump". They said the plaintiffs ordered the new pump for which a charge was made, and that their guaranty had expired. The defendant's serviceman and shop foreman testified that the machines were in as good condition as a used machine could be made when they were delivered to the plaintiffs.

In the defendant's Points I and II it contends that the court erred in admitting, over objection, parol evidence of prior negotiations later reduced to a written contract, and of some matters not appearing in the written contract at all, and at variance with its terms. Specifically, defendant complains that the court, over its objection, gave the plaintiff Cates permission to answer the question pertaining to prior negotiations: "And, did you discuss anything concerning this purchase order?" The ground for the objection was that the parties later reduced their agreement to writing, thus merging all previous negotiations. However, the answer was stricken. Again the court, over objection, allowed the following question to be asked of the plaintiff Green: "Did they tell you anything about this warranty?" The answer was: "Yes, sir, they did. They said all parts would be replaced—when they was rebuilding the machine, absolutely guaranteed to go out and serve the person, what we wanted it for without any trouble". He continued, after interruptions, to say: "And all parts, or all trouble that developed in the machine within 30 days, they would stand the labor and the repairs, and 60 days after or, yeah, 60 days I'd stand the repairs and them the labor". Again the question was asked plaintiff Green: "Did they tell you anything, or say anything to you about the condition of this machine? A. Absolutely * * * Absolutely guaranteed to serve the purpose * * *".

The contract, as stated, was a printed form of "Purchase Order", with certain written or typewritten insertions. The evidence discloses that the provision regarding the "manufacturer's warranty" was a part of the printed portion of the contract and

was located at the end of the instrument, just preceding the signatures. Defendant cites authorities to the effect that parol evidence is not admissible to prove the terms of a written contract when such evidence pertains to agreements prior to the written contract and at variance with its terms. Abrahams & Sons Constr. Co. v. Osterholm, Mo.App., 136 S.W.2d 86; Cantrell v. Burgess, Mo.App., 141 S.W.2d 200. The rule is well established. In the Abrahams case, supra, the court held the evidence inadmissible because plainly contradictory of the written contract. In the Cantrell case the same principle is approved but not applied because there was no written contract in that case.

The plaintiffs contend that the contract is ambiguous as to the guaranty and warranty; that the court cannot say that the parol evidence in question was contradictory of the written contract in this case; that parol evidence of explanatory statements pertaining to ambiguous provisions of a written contract and made by the defendant prior to the contract and not at variance with its terms is admissible. They cite Securities Inv. Co. v. International Shoe Co., Mo.App., 5 S.W.2d 682, 685, wherein the court said: "* * * where the meaning of the parties is uncertain from the words used, and it is not within the power of the court to ascertain the intent by reference solely to the body of the instrument itself, evidence of the acts and conduct of the parties prior to, contemporaneous with and subsequent to the execution of the instrument, may properly be considered as an aid in arriving at the correct interpretation to be put upon the language actually used."

■ According to the evidence in the case at hand the contract was prepared by the defendant. It elected to use the printed form of purchase order which contained a printed warranty as follows: "It is understood that the machinery is sold by the Dealer with the standard warranty of the manufacturer. This warranty is the only warranty, either express, implied or statutory, upon which Machinery is sold". This does not state what the "standard warranty of the manufacturer" is, nor is it defined anywhere in the instrument. As will be noted, it also declares that there is no other warranty, express or implied, to cover the property sold. Nevertheless, the defendant inserted in another part of the contract the words: "30 days—parts & labor furnished 60 days customer furnishes parts we furnish labor". Whether such inserted provision constitutes the same warranty as later referred to as a "standard manufacturer's warranty", or is additional thereto or contradictory therewith, does not appear upon the face of the contract. Under this state of ambiguity it was proper for the court to permit parol evidence as to what was said between the parties pertaining to the agreed warranty and guaranty. 12 Am.Jur. p. 757, Sec. 234. See Dimick v. Noonan, Mo.App., 242 S.W. 2d 599, 602, and authorities there cited.

■ The defendant complains of the plaintiffs' Instruction 1 because, among other things, it requires the jury to find, if it rendered a verdict for the plaintiffs, that "* * * all parts used therein (referring to the machinery sold) would be new parts and without defect, * * *". It is claimed the plaintiffs knew the machinery was rebuilt and that there was no evidence it was to contain all new parts. The part of the instruction referred to reads: "* * if you find and believe * * * that before the sale was completed the plaintiffs told defendant about the kind of work they expected to do with the equipment, and that the defendant then and there represented and warranted to plaintiffs that said equipment, when delivered to plaintiffs, would be of the same quality and condition as new equipment, and that all parts used therein would be new parts and without defect, and that said equipment would perform and operate as new equipment for the purposes told to the defendant by the plaintiffs. * * *". The intention of the instruction, when read as a whole, was not, in our opinion, to require a finding that the "equipment", when sold and delivered, be com-

posed wholly of new parts, but would be of the *same quality* as new equipment, and the equipment would operate as new equipment and that the parts thereafter furnished under the guaranty would be new and without defect. Nothing in the evidence indicates that either party understood that the equipment, when "rebuilt" and assembled and delivered, was to be composed of all new parts, and there is no justification for the contention that the jury so misunderstood the instruction.

■ Defendant next asserts that the petition did not authorize the submission of the issue whether defendant represented and warranted the equipment, when delivered, to be of the same quality and condition as new equipment and would perform as such for the purposes thereof, as stated to the defendant. Paragraph V of the petition states: "That in about said Contract, Defendant guaranteed and warranted that the said Tractor and Dozer would have new warranty and guarantee, and to be a machine of first class and superior quality, * * *". We think that allegation sufficient to authorize the submission of the question whether the defendant agreed to warrant the machines to be as good as new equipment and would perform as such for the purposes stated, and we believe that issue was within the scope of the evidence. We do not find any material error in the plaintiff's Instruction 1.

■ The defendant next objects to the refusal of the court to give its Instruction C. That instruction, in part, would have told the jury substantially that when a printed contract is altered by interlineation which conflicts with the printed portions, the interlineation will prevail, and that the contract in this case provided for the thirty and sixty day repair period described, and if the defendant did so furnish the parts and labor during those periods, the verdict should be for the defendant. Defendant contends that the printed warranty and the typewritten warranty conflict; that the former should therefore prevail, and that the evidence showed it was so intended. The rule cited is generally recognized and the cases which defendant cites well and properly applied it.

■ However, plaintiffs assert that the rule does not apply here because the contract itself does not disclose any contradiction between the two warranty clauses, or at least, it was ambiguous since it did not explain what the "standard manufacturer's warranty" constituted, although it provides that it is the only warranty, express or implied, on the machinery sold. We think this contention must be sustained. Nowhere does the contract on its face reveal whether the two warranty clauses conflict. It is true that defendant's agent Creason said that the manufacturer's warranty never applied except when the finished product sold was new and then for a period of 90 days. This statement, of course, was not conclusive in the absence of such limitation shown in the contract itself, or evidence that plaintiffs otherwise so agreed, and the court was without authority to instruct the jury to disregard the printed warranty contained in the contract. The jury, in such cases, should endeavor to reconcile the various parts of the contract insofar as possible. Belt Seed Co. v. Mitchelhill Seed Co., 236 Mo.App. 142, 153 S.W. 2d 106; 12 Am.Jur. p. 798, Sec. 253; Williston on Contracts, Rev.Ed., Vol. 3, p. 1781, Sec. 619. We think the court properly refused Instruction C.

■ Defendant's next point is that the court erred in permitting counsel for the plaintiffs in his closing argument to the jury to comment upon the failure of the defendant to call as a witness Peter Igoe, who was the person who explained the warranty to the plaintiffs, he being equally available to the plaintiffs as a witness. According to the evidence Peter Igoe was the manager of the defendant company at the time the contract in this case was signed and he prepared the contract for signatures, and signed the same in defendant's behalf. Under the authorities Peter Igoe was therefore not "equally" available as a witness to the plaintiffs. Narens v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 37; Hancock v. Union Pacific R. Co., Mo.App., 231 S.W.2d 225, 229.

It is next complained that the verdict is excessive. Defendant points out that the conceded purchase price was $7,-905 (including sales tax); that plaintiffs' evidence showed the machinery to have been reasonably worth $2,500 at the time of purchase. The difference between those amounts is $5,405. The verdict was for $5,835, or $430 more than the difference between the market value claimed and the price paid. However, the plaintiffs argue that they paid defendant the bill of $531.-81 for repairs due to defects which actually appeared within the first thirty days, therefore making a total outlay in excess of the verdict. But plaintiffs, in their Instruction 1, setting forth the measure of damages, asked only for the "difference between the price paid by the plaintiffs to defendant, and the reasonable value of said equipment at the time and place of delivery of said equipment described in evidence". Plaintiffs are, of course, not entitled to a verdict for more than the measure of damages described in the instruction given to the jury at their request. Therefore, the verdict was excessive to the extent of $430.

Lastly, defendant assigns as error the action of the trial court in overruling its motion for a directed verdict on the ground of failure of the plaintiffs to prove any breach of contract. There was evidence that defects continued to appear in the machines and that some of them were the same as were called to the defendant's attention within the first thirty day period and that some of the defects still existing were traceable to those first appearing but not properly remedied by the defendant. These were matters for the jury, and the court properly refused the motion for a directed verdict.

If the plaintiffs will, within fifteen days after the filing of this opinion, remit $430 of the verdict and judgment, the judgment will stand affirmed in the amount of $5,-405; otherwise, the judgment will be reversed and the cause remanded. All concur.